IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



JAMES KELLY,

    Petitioner,

v.                                               CRIMINAL ACTION NO. 2:18-cr-13

UNITED STATES OF AMERICA,

    Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner **JAMES KELLY**'s ("Petitioner") Motion for Compassionate Release. ECF Nos. 24 and 28. For the reasons stated below, Petitioner's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On February 5, 2018, Petitioner was named in a single-count Criminal Information filed by the United States Attorney's Office in the Eastern District of Virginia. ECF No. 1. Petitioner pled guilty to Count 1 for Attempted Receipt of Images of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2). ECF No. 5. On July 16, 2018, the Court sentenced Petitioner to **eighty-four (84) months** imprisonment on the single count. ECF No. 19.

The Statement of Facts alleges that between October 21, 2016 and June 16, 2017, an undercover special agent with the Federal Bureau of Investigation ("FBI") accessed the Internet and connected to a peer-to-peer ("P2P") file-sharing network using a law enforcement client program used to monitor the trafficking of images of minors engaging in sexually explicit conduct over P2P networks. ECF No. 7. The agent focused his investigations on an IP Address that was eventually identified as belonging to Petitioner. *Id.* This IP Address was associated with sharing files identified as depicting minors engaging in sexually explicit conduct. *Id.* On several occasions,

1

law enforcement successfully completed the download of files containing visual depictions of minors engaging in sexually explicit conduct. *Id.*

Between May 10, 2017 and July 7, 2017, an undercover Virginia State Police agent simultaneously investigated the same IP Address. *Id.* On several occasions, law enforcement successfully completed the download of files containing visual depictions of minors engaging in sexually explicit conduct. *Id.* On September 7, 2017, law enforcement executed a state search warrant at Petitioner's residence. *Id.* Law enforcement seized electronic media found to contain hundreds of files containing visual depictions of minors engaging in sexually explicit conduct. *Id.* Petitioner is attributed with downloading and viewing 7,317 such images. *Id.*

On March 11, 2021, Petitioner filed a *pro se* Motion for Compassionate Release based upon the ongoing COVID-19 pandemic. ECF No. 24. The Court ordered appropriate responses on March 17, 2021. ECF No. 26. Petitioner's counsel supplemented Petitioner's Motion on April 16, 2021. ECF No. 28. The Government responded in opposition on May 17, 2021. ECF No. 34. Petitioner then filed a reply on May 24, 2021, ECF No. 35. Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Federal Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* Courts may; however, waive the

exhaustion requirement under exigent circumstances. *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment upon a motion from the petitioner and after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" were previously described by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified in light of the petitioner's medical condition, age, or family circumstances. U.S.S.G. §1B1.13, n. 1 (A)–(C). Additionally, the Sentencing Commission further defined the limits under which a sentence reduction may be awarded. *Id.* The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 981 F.3d 271 (4th Cir. 2020); *see also United States*

3

*v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive").

Additionally, a petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Instead, the Court may consider a combination of factors, including — but not limited to — those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Issue

On October 20, 2020, Petitioner completed a request for compassionate release based upon the ongoing COVID-19 pandemic. ECF No. 28-3. The warden of Petitioner's correctional facility denied his request on December 1, 2020. *Id.* Because 30 days lapsed between Petitioner's request and the warden's response, Petitioner satisfied the exhaustion requirements under § 3582(c)(1)(A). Moreover, had the warden's denial been timely, that too would warrant satisfaction of the exhaustion requirements under § 3582(c)(1)(A). Therefore, the Court properly has jurisdiction to adjudicate Petitioner's motion for compassionate release.

### B. Resolution of Petitioner's Request for Compassionate Release

*1. Evaluation of Petitioner's "Extraordinary and Compelling Reason"*

In evaluating whether an "extraordinary and compelling reason" for release has been established based upon the COVID-19 pandemic, the Court considers the severity of the ongoing

COVID-19 outbreak in federal prisons. *See e.g. Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the BOP's ineffective efforts to curtail the spread of the virus within FCI Elkton).

Here, Petitioner is presently incarcerated at FCI Fort Dix which houses approximately 2,871 inmates. *FCI FORT DIX*, BOP, https://www.bop.gov/locations/institutions/ftd/. At this time, FCI Fort Dix oversees 1754 inmates who have recovered from COVID-19 but maintains no current COVID-19 diagnoses. *See COVID19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus/. As the BOP continues to distribute its allotment of COVID-19 vaccines, FCI Fort Dix has fully vaccinated 1634 inmates, including Petitioner. *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/; ECF No. 28.

Specific to each petitioner, the Court examines the Centers for Disease Control's list of risk factors for severe COVID-19 complications when assessing compassionate release motions during the pandemic. *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020). Here, Petitioner proffers his age, pre-diabetes, hypertension, and obesity as underlying conditions that may exacerbate a potential COVID-19 infection. ECF No. 28 at 1. The CDC does indicate that being obese (BMI > 30 but < 40) and having hypertension "can make you more likely to get severely ill from COVID-19."[1] The CDC also states that older adults are "more likely to get severely ill from COVID-19"[2] Being pre-diabetic, however, is not a condition that the CDC lists as increasing one's risk of severe illness should they contract the virus. Despite Petitioner's

---

[1] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.
[2] *Id.*

5

ailments, however, the Court is unable to conclude that Petitioner presents an extraordinary and compelling reason to warrant release from prison.

The Court has examined Petitioner's brief and medical records and notes that Petitioner's last recorded weight from several months ago was 220 lbs. ECF No. 28 at 10; ECF No. 25. Since Petitioner stands at 6 ft. 2 in., his last known BMI is 28.2. Petitioner argues, however, that his current weight has increased to 232 lbs., making his BMI just over the obesity threshold at approximately 30.6. *Id.* While the Court has no medical record of this BMI, the recent increase in weight indicates to the Court that Petitioner's BMI is likely manageable through diet and exercise. The Court also notes that Petitioner is 55 years old and has consistently high blood pressure readings that are seemingly uncontrolled despite medication. ECF No. 25. But Petitioner is fully vaccinated which leads the Court to believe that Petitioner is sufficiently protected from harm that may be caused by a potential COVID-19 diagnosis.

The CDC advises that upon vaccination, "[y]ou can resume activities that you did prior to the pandemic," and "[y]ou can resume activities without wearing a mask or staying 6 feet apart."[3] Moreover, "COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death." *Id.* With this information from the CDC and knowing that Petitioner is fully vaccinated and in an environment in which most of the inmates within his facility are also vaccinated (and continuing to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration.

*2. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

In evaluating *18 U.S.C. § 3553(a)* as applied to Petitioner, even if Petitioner had an extraordinary and compelling reason for release, his § 3553(a) factors do not favor a sentence

---

[3] *When You've Been Fully Vaccinated*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Jun. 17, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.

reduction at this time. The Court notes that Petitioner's offense conduct is much more serious than the title offense. Upon execution of a search warrant, law enforcement uncovered hundreds of files containing images and video of minors engaged in sexually explicit conduct. In total, Petitioner is attributed with over 7,000 images of the sexually explicit conduct. By obtaining these images, Petitioner contributed to the continued production of these unlawful images in furtherance of sex trafficking, rape, and other harmful sexually explicit conduct. Based upon the foregoing, Petitioner's offense conduct strongly implicates the need for a sentence "to reflect the seriousness of the offense…and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A)–(B).

To date, Petitioner has served approximately 40 months of his 84-month sentence (nearly 50% of his obligation). The Court recognizes that Petitioner has been an influential volunteer in the Suicide Prevention Program at FCI Fort Dix, maintained steady employment while incarcerated, and successfully completed various additional rehabilitation programming. ECF No. 24-1. However, after full consideration of the § 3553(a) factors, the Court concludes that the purposes of Petitioner's sentence remain unfulfilled.

While the world continues to grapple with the pandemic, it is imperative to acknowledge that many persons who are incarcerated suffer from a variety of ailments that may make them susceptible to severe illness from a COVID-19 diagnosis. With the added protection of a COVID-19 vaccine, vaccinated inmates with various comorbidities are now better positioned against a COVID-19 diagnosis than the inmates who were released prior to widespread accessibility to a COVID-19 vaccine. As the Court continues to exercise its discretion in releasing the most vulnerable inmates in light of the pandemic, the Court declines to release inmates who lack a significant showing of potential fatality from a COVID-19 diagnosis, especially those that are fully vaccinated. Based upon the foregoing reasoning, the Court is unable to find an extraordinary and

compelling reason for relief after considering the unfulfilled purposes of Petitioner's original sentence.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**. The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 2, 2021

Raymond A. Jackson
United States District Judge